# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | CRIMINAL ACTION |
| v. ) | |
| ) | No. 11-20111-01-KHV |
| DANA J. HUFF, ) | |
| ) | |
| Defendant. ) | |
| _____) | |

## MEMORANDUM AND ORDER

On January 4, 2013, the Court sustained defendant's motion to suppress because the government did not establish that officers lawfully arrested defendant. See Memorandum And Order (Doc. #54). This matter is before the Court on the Government's Motion To Reconsider Suppression Issue And Motion To Continue Jury Trial (Doc. #56) filed January 6, 2013. On January 24, 2013, the Court held a hearing on the government's motion. For reasons stated below, the Court sustains the government's motion.

## Factual Background

Based on the testimony at the hearing on defendant's motion to suppress, the Court found the following facts:

> Late in the evening on June 1, 2011, Officers Christopher O'Neill and Brad Lancaster of the Kansas City, Kansas Police Department were on routine patrol when they observed a gray 1995 Isuzu Rodeo stopped in the wrong lane (left of the center stripe) on Armstrong near 5th Street. Defendant was driving the vehicle and Jarvon Williams was in the front passenger seat. After a few seconds, officers saw the vehicle back up and move into the correct lane. The vehicle turned north onto 5th Street. The officers activated their emergency lights and conducted a traffic stop because of the observed traffic violation.
>
> Officer O'Neill approached the vehicle on the driver's side and Officer Lancaster approached the vehicle on the passenger side. While using a flashlight to look through a side window on the right side of the car, Officer Lancaster saw a

handgun in plain view protruding from underneath the back of the driver's seat. Officer Lancaster used the radio code "Signal 1" to alert Officer O'Neill and dispatch that the occupants were armed and dangerous. The officers directed the occupants of the vehicle to place their hands on the dash. Because defendant appeared to be moving his hands back and forth and they were near the gear shift, Officer Lancaster opened the passenger door, leaned into the car and removed the keys from the ignition. While doing so, Officer Lancaster saw a second firearm, a rifle, which was between Williams and the center console. As soon as Williams realized that Officer Lancaster had seen the rifle, Williams spontaneously said "he [the driver] put it on my lap." The officers directed defendant and Williams to exit the vehicle, handcuffed them and placed them in the back of the patrol car. Officers then arrested defendant and Williams.

Memorandum And Order (Doc. #54) at 1-2 (footnotes omitted).

## Analysis

The government asks the Court to reconsider its ruling on defendant's motion to suppress. In its original response brief, the government argued that during the traffic stop, officers quickly determined that defendant was a felon in possession of a firearm. Because the government presented no evidence to support this factual assertion or any alternative basis to arrest defendant, the Court found that the government did not meet its burden to show probable cause to arrest defendant and sustained defendant's motion to suppress. See id. at 7-9. In its motion to reconsider, the government argues that officers had probable cause to believe that defendant had violated a municipal ordinance which prohibits transporting a firearm unless it is unloaded and in an enclosed container.[1]

**I.    The Court Will Reconsider Its Ruling On Defendant's Motion To Suppress**

The Court has discretion to re-open a suppression hearing. See United States v. Wiseman,

---

[1] The ordinance makes it unlawful to transport "any pistol, revolver, or other firearm which is not unloaded and encased in a container which completely encloses the firearm." Kansas City, Kansas Municipal Ordinance § 22-177(a)(5).

172 F.3d 1196, 1207-08 (10th Cir. 1999) (decision reviewed for abuse of discretion). While the Court is reluctant to re-open a ruling on a substantive motion simply because government counsel forgot to present evidence or argument on a particular issue, the Court finds that it is appropriate to do so in this case. The government's mistake relates to an omission of a legal argument, not the failure to present evidence on a particular issue. In light of the municipal ordinance, defendant cannot show police misconduct which is the primary rationale for suppressing evidence. See United States v. Bayless, 201 F.3d 116, 132 (2d Cir. 2000) (district court has broad discretion to permit government to introduce new evidence on motion to reconsider in interests of justice); United States v. Rabb, 752 F.2d 1320, 1323 (9th Cir. 1984) (defendant acquires no personal right of redress in suppressed evidence because rationale for suppressing unlawfully obtained evidence is to deter official misconduct, not to compensate criminal defendant for violation); United States v. Regilio, 669 F.2d 1169, 1177 (7th Cir. 1981) (defendant entitled to have evidence suppressed only if it was obtained unconstitutionally); cf. Herring v. United States, 555 U.S. 135, 144 (2009) (exclusionary rule applies where conduct is "sufficiently deliberate that exclusion can meaningfully deter it, and sufficiently culpable that such deterrence is worth the price paid by the justice system"). Absent police misconduct, the public has a strong interest in the admission of all relevant evidence of criminal conduct. See United States v. Ozuna, 561 F.3d 728, 734-35 (7th Cir. 2009) (because of societal interest in admission of relevant evidence of crime, government not required to justify why it did not raise issue earlier; reopening suppression hearing may be appropriate when proffered evidence calls credibility of witness into question); In re Terrorist Bombings of U.S. Embassies in E. Africa, 552 F.3d 177, 197 (2d Cir. 2008) (if government possesses evidence showing that, in fact, no official misconduct occurred, interests of justice militate strongly in favor of considering

evidence even if it is belatedly brought to court's attention); Regilio, 669 F.2d at 1177 (if no constitutional violation occurred, societal interest in admitting all relevant evidence militates strongly in favor of permitting reconsideration); cf. Pennsylvania Bd. of Probation & Parole v. Scott, 524 U.S. 357, 364-65 (1998) (exclusionary rule's costly toll upon truth-seeking and law enforcement objectives presents high obstacle for those urging its application); United States v. Leon, 468 U.S. 897, 908 (1984) (principal cost of applying exclusionary rule is letting guilty and possibly dangerous defendants go free, something that "offends basic concepts of the criminal justice system").

The Court recognizes that it cannot permit the government to routinely litigate motions in this fashion without undermining the finality of rulings and the orderly administration of criminal justice. United States v. Matos, No. 07-cr-870, 2008 WL 5169112, at *2 (E.D.N.Y. Dec. 8, 2008) (citation omitted). Even so, some vague notion that the government should not have two bites at the apple should not control. In re Terrorist Bombings, 552 F.3d at 196; see United States v. Tucker, 380 F.2d 206, 214 (2d Cir. 1967). Government counsel inadvertently failed to cite the municipal ordinance at the original hearing, but in less than one business day after the Court's ruling, government counsel asked for reconsideration. Defendant has not alleged or shown any cognizable prejudice if the Court reconsiders its ruling. See United States v. Roberts, 978 F.2d 17, 23 (1st Cir. 1992) (courts do not infer prejudice from mere passage of time, particularly short period of time, or requiring party to litigate). In these circumstances, the Court will reconsider its ruling on defendant's motion to suppress. See United States v. Mercadel, 75 Fed. Appx. 983, 2003 WL 21766541, at *6 (5th Cir. 2003) (Table) (district court should reopen proceedings where new evidence goes to outcome determinative fact such as whether officer had probable cause); United States v. Atkins, 1 F.3d 1247, 1993 WL 290157, at *2 (9th Cir. 1993) (Table) (because new

evidence went to heart of credibility determination underlying denial of suppression motion, district court should have reopened issue).

## II.     **Officers Had Probable Cause To Arrest Defendant**

Officers Lancaster and O'Neill had probable cause to stop defendant's vehicle and they lawfully seized the two firearms for safety concerns pending further investigation. See Memorandum And Order (Doc. #54) at 3-7. In the prior order, the Court held that the government did not establish that officers lawfully arrested defendant. See id. at 7-9.

A warrantless arrest is justified if officers have probable cause to believe a person is committing or has committed a crime. United States v. Madden, 682 F.3d 920, 926 (10th Cir. 2012). The government bears the burden to establish probable cause in support of a warrantless arrest. Romero v. Fay, 45 F.3d 1472, 1476 n.1 (10th Cir. 1995). In light of the municipal ordinance which prohibits transporting "any pistol, revolver, or other firearm which is not unloaded and encased in a container which completely encloses the firearm" and the fact that Officer Lancaster saw a handgun in plain view in defendant's vehicle, the government has shown that officers had probable cause to arrest defendant.[2] The Court therefore sustains the government's motion to reconsider.

**IT IS THEREFORE ORDERED** that the Government's Motion To Reconsider

---

[2]     In the prior order, the Court noted that under Kansas law, a traffic violation such as the one observed in this case is insufficient to justify an arrest. See K.S.A. 22-2401(d) (except for traffic, cigarette or tobacco infractions, officer may arrest individual who commits crime in his presence). Even so, for purposes of the Fourth Amendment, the Supreme Court has held that despite any state law limitations, a warrantless arrest for a crime committed in the presence of an arresting officer is reasonable under the Constitution. Virginia v. Moore, 553 U.S. 164, 175-78 (2008) (not province of Fourth Amendment to enforce state law); see Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001) (if officer has probable cause to believe that individual has committed even very minor criminal offense in his presence, he may, without violating Fourth Amendment, arrest offender). Here, because the government did not seek to justify defendant's arrest based on the traffic violation, the Court need not reach this issue.

Suppression Issue And Motion To Continue Jury Trial (Doc. #56) filed January 6, 2013 be and hereby is **SUSTAINED**. **Trial is set for February 12, 2013 at 8:00 a.m.**

Dated this 5th day of February, 2013 at Kansas City, Kansas.

s/ Kathryn H. Vratil  
Kathryn H. Vratil  
United States District Judge